UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

ASHTON KING, ET AL.,

                          Plaintiffs,

           - against -

APTDECO, INC., ET AL.,

                          Defendants.

———————————————————————

20-cv-9865 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiffs, Ashton King and Teashawn Smith, on behalf of themselves and others similarly situated, sued their former employer, AptDeco, Inc.; its Chief Executive Officer and co-founder, Reham Fagiri; and its other co-founder, Kalam Dennis (together, "the defendants"), for violating the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and New York Labor Law § 215. The plaintiffs allege that the defendants failed to pay them minimum wage and overtime compensation, failed to give required notices and wage statements, and made illegal deductions from their wages. King also alleges that the defendants retaliated against him in violation of New York state law.

The defendants now move to stay or dismiss this action pending arbitration. For the following reasons, the defendants' motions are **granted** in part and **denied** in part.

## I.

### A.

AptDeco operates an online marketplace for customers to buy and sell used household furniture. See Decl. of Levonte Bynum, ECF No. 40 ("Bynum Decl."), ¶ 3. Individuals who purchase items through AptDeco's website can retrieve the furniture directly from the seller or use a delivery service provided by AptDeco. Id. This dispute arises from AptDeco's employment of King and Smith, mainly as delivery drivers.

The terms of engagement for King and Smith were governed by a Delivery Services Agreement. See, e.g., Bynum Decl., Ex. D, ECF No. 40-4 ("Agreement"). According to AptDeco, all delivery drivers used by AptDeco are "required to enter into a Delivery Services Agreement with AptDeco that contains the contractual terms of the relationship, including payment terms." Bynum Decl. ¶ 4. The Agreement refers to delivery drivers as "contractors," and AptDeco attests that it "would not permit a contractor to perform delivery services unless that contractor signed an Agreement with" AptDeco. Id. ¶ 6.

Each Agreement also contains an arbitration clause providing in relevant part that:

> "Household Goods Claims" are any and all controversies, claims and disputes regarding loss of or damage to Items and payment disputes brought by a Customer against Contractor or AptDeco. Household Goods Claims shall be finally resolved by one arbitrator in binding arbitration administered by the

> American Moving and Storage Association in accordance
> with its AMSA Household Goods Dispute Settlement
> Program. Any and all other controversies, claims and
> disputes which may arise between the
> parties . . . which relate directly or indirectly to
> this Agreement, its interpretation, performance, non-
> performance, breach, or otherwise . . . shall be
> finally resolved by one arbitrator in binding
> arbitration administered by the American Arbitration
> Association in accordance with its Commercial
> Arbitration Rules and Optional Rules for Emergency
> Measures of Protection.

Agreement at 8.

**B.**

AptDeco hired King in June 2018. From June 2018 until about August 2019, King worked as a driver's assistant for AptDeco. Decl. of Mohammed Gangat, ECF No. 50 ("Gangat Decl."), Ex. A, ECF No. 50-1 ("King Aff."), ¶ 9. King then worked as a delivery driver. Id. In an email dated June 20, 2018, AptDeco sent King an Agreement and informed him that the Agreement "must be signed" before he could begin working for AptDeco. Bynum Decl., Ex. C, ECF No. 40-3. King's electronic signature appears on the document. Agreement at 9. The defendants attest that King electronically signed the Agreement in December 2018. Bynum Decl. ¶ 12.

King disputes that he signed the Agreement. King claims that, when asked to sign the Agreement on two separate occasions, he explicitly refused to do so. King Aff. ¶¶ 4-5. The first time was on receipt of the June 20, 2018 email. King alleges that he did not sign the Agreement because he "didn't

3

understand what it said" and "assumed it would be better for
[his] rights if [he] did not sign." Id. ¶ 4. Then, a few months
into King's employment, AptDeco again asked King to sign the
Agreement. King again did not sign because he assumed "it would
be better for [his] rights if [he] did not sign," but King was
now "even more adamant" about not signing because he had already
worked for several months and was allowed to work without
signing the Agreement. Id. ¶ 5. King was also "suspicious" that
he was not being paid properly and did not want to sign anything
"that would impact [his] rights." Id.

Around November 2018, AptDeco interviewed Smith for a job.
See Gangat Decl., Ex. C, ECF No. 50-3 ("Smith Aff."). At the end
of the interview, Smith was presented with the Agreement and was
told he had to sign it to be hired. Id. ¶ 3. Smith does not
dispute that he signed the Agreement. Instead, Smith alleges
that he was not given time to read and review the Agreement, and
that the Agreement was not explained to him in detail before he
signed it. Id. ¶¶ 4-8. However, in an email dated November 27,
2018, AptDeco sent Smith a copy of the Agreement to read and
sign. Bynum Decl., Ex. A, ECF No. 40-1. AptDeco attests that
Smith "could take whatever time he wanted to review the
document" and that "there was no deadline given" for the
Agreement to be sent back, Bynum Decl. ¶ 10, but the email only
states that Smith "can print out the last page sign it and bring

4

it in on the day of training," and that "if the contract is not signed you cannot start working," id., Ex. A, at 2. Smith worked as a driver's assistant for AptDeco from November 2018 through May 2019. He then worked for a few months as a driver dispatcher for AptDeco.

### C.

On November 23, 2020, King and Smith filed the putative class action complaint in this action. See ECF No. 1. The complaint alleges that, although the Agreements classified the plaintiffs as independent contractors, the plaintiffs were AptDeco employees and were entitled to the legal protections owed to employees, including a minimum wage and overtime compensation. Id. ¶¶ 1-3. King also claims that the defendants retaliated against him in violation of New York state law. Id. ¶ 4. On April 30, 2021, the defendants moved to stay or dismiss this case pending arbitration pursuant to the Agreements with King and Smith. ECF No. 16. On October 28, 2021, this Court denied without prejudice the defendants' motions to compel arbitration. ECF No. 33.

Now before the Court are the defendants' renewed motions to stay or dismiss the case pending arbitration.

### II.

Under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., ("FAA"), "a district court must enter an order to arbitrate upon

being satisfied that the making of the agreement for arbitration
or the failure to comply therewith is not in issue." Moses H.
Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 n.27
(1983). A court considering whether to compel arbitration
pursuant to a purported arbitration agreement must decide "(1)
whether there exists a valid agreement to arbitrate at all under
the contract in question . . . and if so, (2) whether the
particular dispute sought to be arbitrated falls within the
scope of the arbitration agreement." Hartford Accident & Indemn.
Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir.
2001).[1]

### III.

King argues that he never signed his Agreement with AptDeco
and that he therefore is not subject to any valid arbitration
agreement with the defendants.

Because state contract law governs whether the parties
agreed to arbitrate, see Specht v. Netscape Commc'ns Corp., 306
F.3d 17, 26 (2d Cir. 2002), it is first necessary to determine
which state's law applies. New York law applies in this case
because "[t]he parties' briefs assume that New York law
controls, and such implied consent is sufficient to establish

---

[1] Unless otherwise indicated, this Memorandum Opinion and
Order omits all alterations, citations, footnotes, and quotation
marks in quoted text.

choice of law." Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000).

In deciding a motion to compel arbitration, "the court applies a standard similar to that applicable for a motion for summary judgment. If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). Where such a trial is required, the party alleged to be in default of the arbitration agreement may "demand a jury trial of such issue," and "upon such demand the court shall make an order referring the issue or issues to a jury." 9 U.S.C. § 4.

In this case, there is a material factual dispute as to whether King agreed to the Agreement. Under New York law, "[m]utual assent is essential to the formation of a contract and a party cannot be held to have contracted if there was no assent or acceptance." Maffea v. Ippolito, 668 N.Y.S.2d 653, 654 (App. Div. 1998). Although King's electronic signature appears on his Agreement, he submitted an affidavit swearing that he did not sign the Agreement. This affidavit is sufficient to entitle King to a trial under the FAA. See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 32-33 (2d Cir. 2001) ("[A] party alleging that a contract is void — and providing some evidence in support — is entitled to a trial on the contract's arbitrability.").

The defendants argue that King's electronic signature demonstrates his assent to the Agreement. But King denies he authorized his electronic signature, and "courts must refuse to enforce arbitration clauses contained in documents alleged to be forgeries." Firma Melodiya v. ZYX Music GMBH, No. 92-cv-6798, 1995 WL 28493, at *4 n.3 (S.D.N.Y. Jan. 25, 1995). Under these circumstances, King's electronic signature standing alone does not show his assent to the Agreement.

The defendants also argue that King ratified the Agreement by performing services for AptDeco. This argument is without merit. It is true that an agreement to arbitrate may be formed by conduct that demonstrates the parties' mutual assent, and that in some cases an "employee may consent to a modification to the terms of employment by continuing to work after receiving notice of the modification." Marigault v. Macy's East, LLC, 318 F. App'x 6, 8 (2d Cir. 2009). But where an employee expressly refuses to agree to a contract and the employer continues to allow the employee to work, the employee's continued work does not alone constitute acceptance of the contract. See Rightnour v. Tiffany & Co., 239 F. Supp. 3d 744, 753 (S.D.N.Y. 2017) (concluding that an employee's continued employment after she read dispute resolution agreement did not "operate[] as conclusive and irrebuttable evidence of her intent to be bound by it," where she "provided written notice to her employer,

8

including notice through counsel, that she rejected" the agreement's terms); accord id. at 753 n.4 (collecting cases from Courts of Appeals in other Circuits that "have come to the same conclusion in similar cases").

King alleges that he expressly objected to the Agreement and twice refused to sign it. Further, King alleges that he continued working for AptDeco after declining to sign the Agreement on the understanding that his signature was not a necessary precondition for working for the defendants. See King Aff. ¶ 5. Given these allegations, there is a material factual dispute as to whether King agreed to arbitrate.

King has "put the making of the [Agreement], including the agreement to arbitrate, in sufficient issue as to the warrant a trial on the question whether the arbitration clause in [the Agreement] is enforceable." Sphere Drake, 263 F.3d at 33. Thus, a trial is necessary to determine whether King agreed to arbitrate his claims against the defendants. King has requested that this trial be before a jury.[2] Accordingly, the Court will

---

[2] King requested a jury trial in the plaintiffs' opposition to the defendants' motion to compel arbitration. This request was timely. Section 4 of the FAA provides that if a party opposing arbitration demands a jury trial, it must do so "on or before the return day of the notice of application." 9 U.S.C. § 4. The Court of Appeals for the Second Circuit has not squarely interpreted this language, but several courts have "consider[ed] the demand timely where the party opposing arbitration demands a jury trial in his or her response to the motion to compel arbitration." Williams v. MetroPCS Wireless,

hold a jury trial on the issue of whether King agreed to arbitrate his claims against the defendants. The defendants' motion to compel arbitration of King's claims is therefore **denied without prejudice**.

IV.

A.

Smith does not dispute that he signed his Agreement with AptDeco, but Smith asserts that he was not given enough time to review the Agreement before he signed it. The record does not support this contention. Smith does not dispute that he received the Agreement in advance of signing it. Under New York law, "parties are presumed to know the contents of the agreements they have signed." Superior Officers Council Health & Welfare Fund v. Empire HealthChoice Assurance, Inc., 927 N.Y.S.2d 324, 326 (App. Div. 2011). Moreover, "a party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms." Marciano v. DCH Auto Grp., 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014). By signing the Agreement, Smith agreed to be bound by its terms, including its arbitration clause.

---

Inc., No. 09-cv-22890, 2010 WL 11505112, at *2 (S.D. Fla. Feb. 4, 2010); accord Dassero v. Edwards, 190 F. Supp. 2d 544, 557 (W.D.N.Y. 2002). The defendants have not contended that King failed to make a timely demand for a jury trial on the existence of a binding arbitration agreement.

10

**B.**

Smith argues that his claims against the defendants are outside the scope of the arbitration clause. Smith contends that the arbitration clause covers only disputes between AptDeco and its customers, not between AptDeco and those it allegedly employs. Smith also contends that the arbitration clause does not cover the time Smith alleges he was underpaid while working as an AptDeco dispatcher.

Pursuant to the Agreement, these issues of scope are for the arbitrator, not the Court, to resolve. Parties may delegate issues of arbitrability, such as the scope of the arbitration, to arbitrators so long as that delegation is clear and unmistakable. Contec Corp. v. Remote Sol., Co., 398 F.3d 205, 211 (2d Cir. 2005); Applebaum v. Lyft, Inc., 263 F. Supp. 3d 454, 470 (S.D.N.Y. 2017). The parties have done so here. The Agreement's arbitration clause incorporates the AAA Commercial Arbitration Rules. These rules empower the arbitrator to rule on the scope of an arbitration agreement or "the arbitrability of any claim or counterclaim." AAA Rule 7(a). The parties' incorporation of the AAA Rules "serves as clear and unmistakable evidence of the parties' intent to delegate such issues to the arbitrator." 1199SEIU United Healthcare Workers East v. PSC Cmty. Servs., 520 F. Supp. 3d 588, 607 (S.D.N.Y. 2021).

11

In any event, the arbitration clause plainly covers Smith's claims against the defendants. Smith focuses on the arbitration clause's first two sentences, which provide for arbitration of certain controversies "brought by a Customer against Contractor or AptDeco," to be administered by the American Moving and Storage Association. Agreement at 8. Smith is correct that this provision does not encompass his claims against the defendants. But Smith ignores the arbitration clause's next provision: that "[a]ny and all other" claims and disputes between the parties "which relate directly or indirectly to this Agreement . . . shall be finally resolved by one arbitrator in binding arbitration." Id. This is a paradigmatic "broad" arbitration clause. See, e.g., Collins & Aikman Products Co. v. Bldg. Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995) (concluding that a clause "submitting to arbitration 'any claim or controversy arising out of or relating to the agreement,' is the paradigm of a broad clause"). The provision's plain language belies Smith's contention that the provision covers disputes only between customers and AptDeco. Rather, the arbitration clause encompasses Smith's claims that he was misclassified as an independent contractor instead of an employee throughout his employment with AptDeco.

12

C.

Smith also argues that the Agreement is unconscionable. In New York, a provision in an arbitration agreement is unconscionable if "it is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010). Generally, there must be a showing that such a contract is both procedurally and substantively unconscionable. Id. A showing of both procedural and substantive unconscionability is required in all but "exceptional cases" in which a provision is "so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." Gillman v. Chase Manhattan Bank N.A., 534 N.E.2d 824, 829 (N.Y. 1988). "The procedural elements of unconscionability concern the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract." Ragone, 595 F.3d at 121-22.

Smith argues that the Agreement is unconscionable because it misclassifies employees as independent contractors, allowing the "workers [to] do all the delivery work for [AptDeco] in exchange for less than minimum wage," and because the Agreement then "negat[es] any possibility of workers seeking redress by forcing them to pay exorbitant commercial arbitration fees and

13

costs." ECF No. 49, at 12. Smith cannot avoid arbitration on these grounds.

Smith's first argument challenges the validity of the Agreement as a whole, not the arbitration clause specifically. Id. at 13 (contending that the Agreement is "in toto unconscionable"). Where, as here, an arbitration clause incorporates by reference arbitration rules that explicitly delegate arbitrability determinations to the arbitrator, and a "challenge of unconscionability is directed at the contract as a whole, arbitrability is left for the arbitrator." Bethune v. Lendingclub Corp., No. 16-cv-2578, 2017 WL 462287, at *2 (S.D.N.Y. Jan. 30, 2017); see also, e.g., Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68, 73-74 (2010) (delegation clause providing that arbitrator "shall have exclusive authority to resolve any dispute relating to" arbitration agreement precluded courts from considering whether agreement was unconscionable under state law). Accordingly, Smith must direct this argument to the arbitrator, not the Court.

Smith also argues that the costs of arbitration would be prohibitively expensive for him. A party seeking "to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92 (2000). However, under the AAA

14

Rules incorporated into the Agreement, arbitrators retain the discretion to order defendants to pay the entire costs of arbitration. See AAA Rule 47(c). Therefore, Smith's speculative assertion that he would be forced to pay the arbitrator's fee is insufficient at this stage to avoid arbitration. If Smith is ultimately forced to incur the projected arbitration fees, he may raise any issues of the unenforceability of the arbitration award if it is sought to be enforced.

**D.**

Because there is a binding agreement to arbitrate, the defendants' motion to compel arbitration of Smith's claims against the defendants is **granted.**[3]

---

[3] The individual defendants were not signatories to Smith's Agreement. However, under principles of estoppel, a non-signatory to an arbitration agreement may compel arbitration under that agreement where "the issues the nonsignatory is seeking to resolve in arbitration are intertwined" with claims asserted against the signatory. JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 177 (2d Cir. 2004). Courts examine (1) whether the signatory's claims arise under the subject matter of the underlying agreement, and (2) whether there was a close relationship between the defendant signatory and the defendant non-signatory. See, e.g., Ragone v. Atl. Video at Manhattan Ctr., No. 07-cv-6084, 2008 WL 4058480, at *8 (S.D.N.Y. Aug. 29, 2008), aff'd, 595 F.3d 115. Both prongs are met here. Because Smith alleged that he was "employed" by all three defendants, all of Smith's claims arise under the Agreement's subject matter. And because Smith alleges that Faqiri and Dennis are AptDeco's CEO and its co-founder, respectively, there is a close relationship between AptDeco, the Agreement's signatory, and Denis and Faqiri, the non-signatory parties. In any event, Smith does not contend that his claims against the individual defendants are non-arbitrable merely because the individual defendants were not signatories to the Agreement. Accordingly,

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to compel arbitration of King's claims is **denied without prejudice**.[4] The defendants' motion to compel arbitration of Smith's claims is **granted.** Smith's claims against the defendants, including any arbitration of those claims, are stayed pending the jury trial on whether King should be required to arbitrate his claims against the defendants. At that trial, the parties may call any witnesses who are relevant to the issue of whether King agreed to arbitrate. The stay will permit a joint arbitration if King, like Smith, is required to arbitrate his claims.

SO ORDERED.
Dated:     New York, New York
           September 22, 2022

                                      John G. Koeltl
                              United States District Judge

---

Smith is compelled to arbitrate his claims against both AptDeco and the individual defendants.

[4] The Court will schedule a pre-trial conference to discuss submissions for the trial as well as any requests for discovery in preparation for trial.